108 F.3d 1387
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jesus F. TABANICO-MONTANO, Defendant-Appellant.
 No. 96-10182.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 11, 1997.*
Decided March 14, 1997.
 
 Before: SNEED, LEAVY, and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Jesus Tabanico-Montano appeals his conviction following entry of a conditional guilty plea to possession of marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Tabanico-Montano contends the district court erred by denying his motion to suppress evidence because: (1) Tabanico-Montano's testimony was more credible than the border patrol agents' testimony; and (2) the border patrol agents lacked reasonable suspicion to stop his vehicle. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 Background
 
 3
 On October 16, 1995, Border Patrol Agents Duggan and Santana were observing traffic at kilometer 41 of Interstate 19, a route from Mexico to Arizona, when a Ford Taurus with Mexico license plates and three male occupants drove north past their marked vehicle. Shortly after the agents spotted the Taurus, Tabanico-Montano drove by in a Ford Thunderbird with tinted, partially open windows. When the agents followed the Thunderbird, they noticed the Taurus parked on the side of the road. As the agents neared the Thunderbird, the Taurus pulled out into the northbound lane in front of them but behind the Thunderbird. The officers stopped the Taurus and found the occupants to be lawfully in the United States. After following the Thunderbird a few kilometers and pulling up beside it, the agents noticed that Tabanico-Montano was chewing gum excessively, smoking a cigarette rapidly, and tapping the steering wheel. The agents then fell behind the Thunderbird and observed the car swerve across the shoulder line and then across the middle divider.
 
 
 4
 At the suppression hearing, Agent Duggan testified that the partially open, tinted windows were significant to him because the identity of the occupants and the cargo remains concealed while still eliminating interior odor. He also testified that he was suspicious of the Taurus because alien and narcotics smugglers commonly use a lead vehicle in an attempt to distract law enforcement officers from the load vehicle. At kilometer 58 he turned on the red and blue lights.
 
 
 5
 Agent Duggan further testified that after he turned on the lights Tabanico-Montano continued to drive along the shoulder of the road at 48 miles an hour until he stopped at kilometer 61. He stated that in past experiences, individuals have driven along the shoulder of the road at a reduced speed looking for a place to "bail out of the car" so as to escape apprehension. Agent Santana also testified at the suppression hearing, and her testimony corroborated the testimony of Agent Duggan.
 
 Credible Testimony
 
 6
 Tabanico-Montano contends that the district court erred by choosing to believe the agents' testimony that he failed to stop after the agents turned on their lights. This contention lacks merit.
 
 
 7
 Credibility determinations are matters best left to the trier of fact. See United States v. Vasquez, 858 F.2d 1387, 1391 (9th Cir.1988). Consequently, we review a district court's factual findings for clear error and give deference to a trial court's credibility findings. See United States v. Ramos, 923 F.2d 1346, 1351 (9th Cir.1991).
 
 
 8
 Here, the district court concluded that the border patrol agents' testimony was more credible than Tabanico-Montano's. In particular, the court found that certain statements made by Tabanico-Montano regarding Agent Santana's questioning of him substantially undermined other matters he had mentioned. The court also stated that it found the agents to be "very credible, professional, disinterested, and simply straightforward in summarizing what had occurred." Accordingly, the district court did not clearly err by finding the agent's testimony to be more credible. See Vasquez, 858 F.2d at 1391; Ramos, 923 F.2d at 1356.
 
 Reasonable Suspicion
 
 9
 Tabanico-Montano also contends that the Border Patrol agents lacked reasonable suspicion to stop him. This contention lacks merit.
 
 
 10
 We review de novo determinations of reasonable suspicion justifying an investigatory stop. See United States v. Ornelas, 116 S.Ct. 1657, 1663 (1996). "To detain a suspect, a police officer must have reasonable suspicion, or specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." United States v. Michael R., 90 F.3d 340, 346 (9th Cir.1996) (citation omitted). "To determine whether reasonable suspicion existed, a court must consider the totality of the circumstances surrounding the stop." Id. "[A] seizure does not occur if, in response to a show of authority, the subject does not yield; in that event, the seizure occurs only when the police physically subdue the subject." United States v. Santamaria-Hernandez, 968 F.2d 980, 983 (9th Cir.1992); see California v. Hodari D., 499 U.S. 621, 628-29 (1991) (holding that defendant's attempt to flee in his vehicle postponed the point of seizure until he was physically subdued after the chase).
 
 
 11
 Here, Tabanico-Montano appeared to engage in a ploy to divert the agents' attention from his vehicle; his windows were tinted and partially open indicating either drug or alien smuggling; he appeared nervous; and his car was weaving. Also, when the agents pulled behind Tabanico-Montano and signaled for him to stop, he continued to travel at a slower speed for 3 kilometers. The agents did not seize Tabanico-Montano until his car came to a stop at kilometer 61. See Hodari D., 499 U.S. at 628-29; Santamaria-Hernandez, 968 F.2d at 983. By that time, and under the totality of the circumstances, the agents clearly had reasonable suspicion to stop Tabanico-Montano. These "specific, articulable facts," in light of the trained agents' experience, gave the officers a basis for suspecting that Tabanico-Montano was engaged in criminal activity. See Michael R., 90 F.3d at 346.
 
 
 12
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Accordingly, Tabanico-Montano's request for oral argument is denied
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3